## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTEHRN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

DESHON BAYLESS
& ANGELIA PAGE                                                     PLAINTIFFS

VERSUS                                    Civil Action No. ___2:23-cv-59-HSO-BWR___

JONES COUNTY MISSISSIPPI, SHERIFF JOE BERLIN
CAPTAIN VINCE WILLIAMS, DEPUTY ANDREW YATES,
DEPUTY CHASE SMITH, SERGEANT JAKE DRISKELL,
& DOE OFFICERS 1-6                                                 DEFENDANTS

### COMPLAINT

### [JURY TRIAL DEMANDED]

COME NOW the Plaintiffs, DESHON BAYLESS ("DeShon") and ANGELIA PAGE ("Ms. Page"), who, by and through undersigned counsel, file this Complaint against CAPTAIN VINCE WILLIAMS aka Seven Fingers ("Captain Williams"), DEPUTY ANDREW YATES ("Deputy Yates"), DEPUTY CHASE SMITH ("Deputy Smith"), SERGEANT DRISKELL ("Sergeant Driskell"), SHERIFF JOE BERLIN ("Sheriff Berlin"), JONES COUNTY MISSISSIPPI & DOE OFFICERS 1-6 and show as follows:

### I.     PRELIMINARY STATEMENT

This civil rights action seeks monetary damages against Defendants for past and continuing violations of the Plaintiffs' rights guaranteed by the United States Constitution and Mississippi law. The Defendants' wrongful conduct began on January 11, 2023, while DeShon was at his Jones County, Mississippi residence. Before his interaction with the Defendants, DeShon had never been convicted of any criminal act. At all times relevant herein, DeShon was not engaged in any illegal activity. The Defendants are liable for their constitutional violations and all resulting damages and harms. The constitutional violations resulted from the policies and customs as established and

1

observed by the final policymaker for the Jones County Sheriff's Department ("JCSD"), Sheriff

Berlin. The systemic abuses by the JCSD and Sheriff Berlin result from a custom and culture which

encourages, sanctions, minimizes, and protects violations of the constitutional rights of regular

citizens.

## II.    JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, specifically

under provisions of the Fourth and Fourteenth Amendments of the United States Constitution, 42

U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

2.      This action seeks redress for violations of the civil rights laws of the United States,

and jurisdiction is therefore invoked under 28 U.S.C. §§ 1331 and 1343.

3.      The claims made in this Complaint occurred and arose in the State of Mississippi,

this District, and the Hattiesburg Division. Venue, therefore, lies in this Court under 28 U.S.C. §

1391.

4.      Under 28 U.S.C. § 1367, this Court also has pendent jurisdiction to hear state law

claims.

## III.    THE PARTIES

5.      Plaintiff, Deshon Bayless, is a natural person and a citizen of the United States and

the State of Mississippi.

6.      Plaintiff, Angelia Page, is a natural person and a citizen of the United States and

the State of Mississippi.

7.      Defendant JONES COUNTY is a governmental entity of the State of Mississippi.

Jones County funds and operates the JCSD, the primary law enforcement agency for Jones County.

On information and belief, the policy maker for the Jones County Sheriff's Department is Sheriff

Joe Berlin, who took office on January 6, 2020. This Defendant may be served through its registered agent, Chancery Clerk Bart Gavin, at 415 N. 5th Avenue, Laurel, MS 39441.

8.     Defendant SERGEANT JAKE DRISKELL is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

9.     Defendant CAPTAIN VINCE WILLIAMS is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

10.     Defendant DEPUTY ANDREW YATES is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

11.     Defendant DEPUTY CHASE SMITH is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

12.     Defendant SHERIFF JOE BERLIN is and was at all times relevant to this Complaint a natural person and the Sheriff of Jones County, Mississippi and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

13.     Defendant DOE DEPUTIES 1-6 are any others who participated in the wrongful conduct but whose names and specific involvement are currently unknown to the Plaintiffs.

## STATEMENT OF FACTS

### CIVIL RIGHTS VIOLATION NO. 1
(Unlawful Search)

14.     DeShon's mother, Angelia Page, owns the home at 4737 University Avenue, Laurel, MS 39440. The house had a Ring camera system at all times relevant to this Complaint.

15.     On January 11, 2023, Ms. Page and DeShon lived in this home.

16.     At approximately 5:15 pm, DeShon was in his parked car behind his house. Captain Williams, Deputy Yates, and Deputy Smith entered the residential property and began looking into the house's windows.

### CIVIL RIGHTS VIOLATION NO. 2
(Unlawful Seizure)

17.     At some point, Deputy Yates saw DeShon.

18.     Then, without reasonable suspicion or any other lawful basis, and although DeShon posed no danger to anyone, Deputy Yates ordered DeShon out of his vehicle. DeShon immediately complied with this order and calmly exited his vehicle with his hands up.

### CIVIL RIGHTS VIOLATION NO. 3
(Excessive Force)

19.     Without first ordering Deshon to get on the ground, Deputy Yates grabbed DeShon and, while throwing him to the ground, yelled, "***Get your mother fucking ass on the ground when I tell you to.***" While DeShon was on his back, Deputy Yates violently forced him onto his stomach.

20.     There was no legal basis or justification for ordering DeShon to the ground or forcefully throwing DeShon to the ground.

### CIVIL RIGHTS VIOLATION NO. 4
(Unlawful Search)

21.     Once DeShon was lying on his stomach, Deputy Yates got on top of him.

22.     Then without consent or lawful authority, Deputy Yates conducted a search of DeShon's person.

### CIVIL RIGHTS VIOLATION NO. 5
(Excessive Force)

23.     Captain Williams, aka Seven Fingers, then joined Deputy Yates and assisted in the unlawful seizure of DeShon.

24.     To show his authority and control over DeShon, Deputy Yates grabbed DeShon by the back of the head and violently shoved his face into the dirt.

CIVIL RIGHTS VIOLATION NO. 6
(Excessive Force)

25.     Deputy Yates then relinquished control of DeShon to Captain Williams.

26.     Then while on top of DeShon, Captain Williams insulted and belittled him.

27.     Captain Williams also used his left arm to place DeShon in a chokehold. While doing so, Captain Williams said, "***Let me tell you who the fuck I am. You ever heard of "Seven Fingers'? That's fucking me. Now, say something stupid again. You're going to jail for disorderly conduct. You're going away. How 'bout that?***"

CIVIL RIGHTS VIOLATION NO. 7
(Unlawful Arrest)

28.     Captain Williams arrested DeShon without probable cause and placed him in handcuffs.

CIVIL RIGHTS VIOLATION NO. 8
(False Imprisonment)

29.     DeShon was taken to the Jones County Jail, where he was booked and then incarcerated for approximately 15 hours.

30.     DeShon was released the following day on his own recognizance.

31.     Ms. Page showed Sheriff Berlin part of the incident footage from the Ring camera.

32.     After viewing the video, Sheriff Berlin knew or should have known (1) that his deputies were guilty of violating DeShon's constitutional rights and (2) that his deputies had no probable cause to arrest or charge DeShon.

**CIVIL RIGHTS VIOLATIONS NO. 9 & 10**
(Unlawful Seizure and Search)

33.     The Defendants illegally seized Ms. Page's residence without probable cause or exigent circumstances.

34.     Sergeant Driskell and Deputy Smith did not procure the search warrant for the home until hours later when County Court Judge Wayne Thompson signed it at 6:45 pm.

35.     No probable cause existed for the issuance of this search warrant.

36.     The illegal search warrant was subsequently executed, and the home was searched. However, there was nothing illegal to be found in the home because the Plaintiffs were not engaged in any illegal activity

37.     Under Rule 4.2 of the Mississippi Rules of Criminal Procedure, no warrant can be issued unless it is supported by an affidavit setting out the factual basis which supports the conclusion that probable cause exists. For unknown reasons, the Jones County Sheriff's Department has refused to release the affidavit that purportedly supported the issuance of the search warrant.

38.     Under Rule 4.4 of the Mississippi Rules of Criminal Procedure, Sergeant Driskell was required to return the executed search warrant to the issuing court. For unknown reasons, no warrant has been returned to the issuing court.

39.     As a result of these wrongful acts, Plaintiffs constitutional rights were violated, and they were additionally denied their right to due process.

## IV.    DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

40.    All the relevant acts of Defendants, their agents, servants, and employees were carried out under the color of state law and in their official capacity as agents of the JCSD.

41.    These acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

### COUNT 1
### FOURTH AMENDMENT WARRANTLESS SEARCH
### (Yates, Smith and Williams)

42.    The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their person, houses . . . against unreasonable searches and seizures, shall not be violated . . . ."*

43.    The Fourth Amendment to the Constitution of the United States protects citizens against warrantless searches without probable cause.

44.    Neither Deputy Yates, Deputy Smith, nor Captain Williams had a warrant or probable cause to enter the property.

45.    Deputies entered the property and searched the inside and outside of the home.

46.    This warrantless search violated the Plaintiffs' Fourth Amendment Rights.

### COUNT 2
### FOURTH AMENDMENT UNLAWFUL SEIZURE
### (Yates and Williams)

47.    DeShon had committed no offense against the laws of the United States of America, the State of Mississippi, Jones County, Mississippi, or the City of Laurel, Mississippi.

48.     Deputies had no legal basis for concluding that DeShon was engaged in any criminal activity when they unlawfully entered the property and seized Deshon. Accordingly, DeShon's seizure and detention were unreasonable and unconstitutional.

**COUNT 3**
FOURTH AMENDMENT UNLAWFUL SEARCH
(Yates)

49.     DeShon was not engaged in any unlawful activity while in his vehicle.

50.     Deputies had no reasonable suspicion for concluding that DeShon was engaged in any illegal activity or that he posed a threat or danger to them.

51.     Nevertheless, Deputy Yates searched DeShon's person without his consent.

52.     Accordingly, the Defendants violated DeShon's Fourth Amendment Rights.

**COUNT 4**
FOURTH AMENDMENT EXCESSIVE FORCE
(Yates)

53.     The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

54.     The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

55.     DeShon was not committing a crime when in his vehicle with the door open.

56.     DeShon committed no criminal act in the presence of Deputy Yates.

57.     Deputy Yates had no reasonable suspicion to believe that DeShon had committed a crime.

58.     DeShon did not pose an immediate threat to the safety of Deputy Yates.

59.     DeShon was not actively resisting arrest or attempting to evade arrest by flight.

60.     Nevertheless, without legal authority, Deputy Yates threw DeShon to the ground, pushed his face into the ground, and restrained him.

61.     As a result of this excessive use of force, DeShon suffered emotional and psychological distress.

62.     Under these circumstances, the force used to seize and detain DeShon was excessive and violated his Fourth Amendment Rights.

**COUNT 5**
FOURTH AMENDMENT EXCESSIVE FORCE
(Williams)

63.     The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

64.     The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

65.     At all times relevant herein, DeShon obeyed the orders of the Defendants, whether lawful or not.

66.     DeShon was not committing a crime while sitting in his vehicle with the door open.

67.     DeShon had not committed a crime in the presence of Captain Williams, and Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

68.     DeShon did not pose an immediate threat to the safety of Captain Williams.

69.     DeShon was not actively resisting arrest or attempting to evade arrest by flight.

70.     Nevertheless, Captain Williams aggressively and without justification used excessive force, including a chokehold, to unlawfully seize, place in handcuffs and arrest DeShon.

9

71.    As a result of this excessive use of force, DeShon suffered emotional and psychological distress.

72.    As no crime or violation had occurred, any force to seize and arrest DeShon was excessive and violated DeShon's Fourth Amendment Rights.

## COUNT 6
### FOURTH AMENDMENT UNLAWFUL SEIZURE
(Yates, Williams and Smith)

73.    The Plaintiffs' residence was not the subject of any investigation. Nonetheless, the Defendants unlawfully seized the Plaintiffs' home.

74.    The Defendants knew that there was no legal basis for seizing the home.

75.    The Defendants did not have a search warrant when they entered the property.

76.    Accordingly, the home seizure was unlawful and violated the Fourth Amendment's protection against unreasonable seizures.

## COUNT 7
### FOURTH AMENDMENT FALSE ARREST
(Yates and Williams)

77.    DeShon had a right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

78.    Deputy Yates and Captain Williams did not have probable cause to arrest DeShon.

79.    Accordingly, these deputies violated DeShon's Fourth Amendement rights.

## COUNT 8
### FAILURE TO INTERCEDE
(Williams)

80.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other law enforcement officers.

81.    Captain Williams knew that Deputy Yates did not have a warrant or probable cause to be on the property. Yet, Captain Williams did nothing to stop Deputy Yates from entering the property and conducting a search.

82.    DeShon was not resisting arrest when Captain Williams joined in to arrest him.

83.    DeShon had not committed a crime in the presence of Captain Williams, and Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

84.    Yet, Captain Williams did not intervene at any point in an attempt to stop any other deputy from engaging in the constitutional violations that followed.

**COUNT 9**
FAILURE TO INTERCEDE
(Yates)

85.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

86.    Deputy Yates knew that there was no warrant or probable cause to be on the property. Yet, Deputy Yates did nothing to stop Captain Williams from entering the property to conduct a search.

87.    DeShon was not resisting arrest when Captain Williams joined in to arrest him.

88.    DeShon had not committed a crime in the presence of Captain Williams. Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

89.    Yet, Deputy Yates did not intervene at any point in an attempt to stop any other deputy from engaging in the constitutional violations that followed.

**COUNT 10**
FAILURE TO INTERCEDE
(Smith)

90.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

91.    Deputy Smith knew that three was no warrant or probable cause to be on the property. Yet, Deputy Smith did nothing to stop Captain Williams or Deputy Yates from entering the property to conduct a search.

92.    DeShon had not committed a crime in the presence of Deputy Williams or Deputy Yates. Neither Deputy Williams nor Deputy Yates had any reasonable suspicion to believe that DeShon had committed a crime.

## COUNT 11
### FAILURE TO INTERCEDE
(Driskell)

93.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

94.    Sergeant Driskell was approached by Captain Williams, Deputy Yates, and Deputy Smith about obtaining a search warrant after DeShon was arrested. Sergeant Driskell was informed of the facts and circumstances leading up to DeShon's arrest.

95.    Sergeant Driskell knew there was no probable cause to enter the property, search the home, and obtain a search warrant. Yet, Sergeant Driskell did nothing to stop Captain Williams, Deputy Yates, or Deputy Smith from arresting DeShon or obtaining a search warrant to search the home.

## COUNT 12
### FAILURE TO INTERCEDE
(Berlin)

96.    Sheriff Berlin is responsible for the unwritten practices and customs of the JCSD, which includes the overall culture of the JCSD and whether that culture respects constitutional rights and requires reporting violations committed by other deputies.

97.    The arrest affidavit used to justify DeShon's arrest was not prepared until the following day, January 12, 2023.

98.    According to the arrest affidavit, **"[w]***hile executing a search warrant on his residence [DeShon] was given commands to exit a vehicle parked in the yard, Bayless ignored commands given and physically resisted Deputy Yates when asked to exit the vehicle*."

99.    Sheriff Berlin knew or reasonably should have known that the arrest warrant contained material misstatements of fact.

100.    Sheriff Berlin knew or reasonably should have known that no warrant had been issued when DeShon was arrested. DeShon did not ignore commands.

101.    Sheriff Berlin knew or reasonably should have known that DeShon did not physically resist the deputies.

102.    The arrest affidavit commenced the criminal action against DeShon for disorderly conduct.

103.    With Sheriff Berlin's approval, the JCSD has continued to pursue the charge of *disorderly conduct, failure to obey*. Miss. Code §97-35-7(1).

104.    On April 20, 2023, the charge against DeShon was tried in the Justice Court of Jones County, Mississippi.

105.    The day before this trial, a supplemental report in support of the charge was prepared and produced by the JCSD. Sheriff Berlin knew and approved of this supplemental report

106.    Sheriff Berlin knew or reasonably should have known that the supplemental report contained material misstatements of fact.

107.    With the approval of Sheriff Berlin, three JCDC deputies testified against DeShon to secure a conviction on the charge of disorderly conduct and failure to obey.

108.    The deputies who testified at trial were (1) Sergeant Driskell; (2) Deputy Yates; and (3) Deputy Smith.

109.    Sheriff Berlin was in attendance at this trial.

110.    As a result of the testimony by these three deputies, DeShon was wrongly convicted of violating Miss. Code §97-35-7(1).

111.    To protect his rights, DeShon had to hire attorneys to defend him against this charge and appeal his wrongful conviction.

112.     At no point after the arrest of DeShon did Sheriff Berlin intercede to have the false charge against him dismissed. Under these circumstances, Sheriff Berlin is liable for violating DeShon's Fourteenth Amendment substantive and procedural due process rights.

## COUNT 13
### MONELL CLAIM

113.    On information and belief, the JCSD has a custom and culture of violating the constitutional rights of others. Though not a written policy, this custom was so widespread as to have the force of law.

114.    None of the JCSD deputies on the scene had body cameras.

115.    The JCSD has a history of wrongfully tolerating, condoning, and encouraging constitutional violations. As a result, the custom and culture at the JCSD is for the JCSD to protect its deputies when they violate the constitutional rights of others, and where the JCSD only

disciplines deputies, if at all, when their actions are exposed by third-party video, making the misconduct impossible to deny or explain away.

116.    The JCSD has a history of fabricating material facts against arrestees and victims of excessive force.

117.    The JCSD has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its deputies feel empowered to act with impunity.

118.    These customs and practices are the moving force behind the violations of the Plaintiffs' rights enumerated herein.

119.    Plaintiffs are aware of five (5) previous occurrences where the JCSD violated the constitutional rights of others.

120.    OCCURRENCE 1 – In January 2023, Sheriff Berlin committed unlawful seizure and simple assault on Monterian Dotson. Sheriff Berlin stopped the assault when he realized he was being observed. Sheriff Berlin slammed Mr. Dotson on a woman's truck, and she yelled at him to stop. Charges were not pressed against Mr. Dotson.

121.    OCCURRENCE 2 – In September 2022, Sheriff Berlin entered the football locker room at South Jones High School and unlawfully seized and assaulted a ninth grader. Charges were not pressed against the ninth grader.

122.    OCCURRENCE 3 – On February 13, 2020, a mom was falsely arrested by the JCSD while in her home. She was then left in jail from February 13, 2020, to February 15, 2020. She was never allowed to see a judge. The JCSD sent her mugshot to the local newspaper advising that she had been charged with possession of methamphetamine with the intent to distribute. The local newspaper published her mugshot with the caption that she had been charged with possession

of methamphetamine with the intent to distribute. However, Ms. Hayes was never charged, and no affidavits or arrest warrants were filed or issued.

123.    OCCURRENCE 4 – In November 2021, Captain Williams was working out Xtreme Fitness when he assaulted James Mitchell and falsely arrested and charged Mr. Mitchell with various criminal acts when the video from the gym showed Captain Williams as the aggressor.

124.    OCCURRENCE 5 – JCSD Reserve Deputy Charles Ryan Walters shot Corey Donald in the back and kicked him in the head, causing his death. While the investigation was being handled by the Mississippi Bureau of Investigation, Sheriff Berlin gave statements to the media that Corey Donald was shot because he reached for Deputy Walters' gun. However, the video obtained by the Mississippi Bureau of Investigation contradicted Sheriff Berlin's version of events.

125.    Sheriff Berlin has never taken corrective action to fix the culture within his department or correct his misstatements to the media.

## V.    DAMAGES

126.    The Defendants are liable to the Plaintiffs, jointly and severally, for all wrongful acts which harmed and caused damage to the Plaintiffs.

127.    Based on these facts and circumstances, and as a direct result of said acts and omissions, one or both Plaintiffs have suffered damage to reputation; past physical pain and suffering; past, present, and future emotional distress; medical bills and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a JURY TRIAL, and that after a jury trial that a judgment be entered against Defendants as follows:

1.    Compensatory damages of at least $1,000,000 or such other amount supported by the evidence at trial;

2.      Punitive damages of at least $4,000,000 or such other amount supported by the evidence at trial;

3.      Attorney fees and costs of suit under 42 U.S.C. § 1988;

4.      Ordinary taxable costs of suit;

5.      Prejudgment and post-judgment interest at the legal rate;

6.      Any other further relief as the Court deems just and appropriate.

Respectfully submitted, this the 25th day of April, 2023.

**DESHON BAYLESS and
ANGELIA PAGE**, Plaintiffs

*/s/ Michael V. Cory, Jr*
MICHAEL V. CORY, JR.
MATTHEW LAWRENCE

Of Counsel:
Matthew W. Lawrence (MSB# 105958)
525 N. Main Street
Hattiesburg, MS 39401
(408) 605-8473
mattlawrencelawfirm@gmail.com

Michael V. Cory, Jr. (MSB# 9868)
mc@dmclaw.net
Christian Medina (MSB# 105708)
cmedina@dmclaw.net
**DANKS MILLER & CORY**
213 South Lamar Street 39201
Jackson, Mississippi 39201
Phone: 601.957.3101