**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**DESHON BAYLESS**
**& ANGELIA PAGE**                                                                                  **PLAINTIFFS**

**VERSUS**                              **Civil Action No. 2:23-CV-00059-HSO-BWR**

**JONES COUNTY MISSISSIPPI, SHERIFF JOE BERLIN**
**CAPTAIN VINCE WILLIAMS, DEPUTY ANDREW YATES,**
**DEPUTY CHASE SMITH, SERGEANT JAKE DRISKELL,**
**& DOE OFFICERS 1-6**                                                       **DEFENDANTS**

## FIRST AMENDED COMPLAINT

[JURY TRIAL DEMANDED]

COME NOW the Plaintiffs, DESHON BAYLESS ("DeShon") and ANGELIA PAGE ("Ms. Page"), who, by and through undersigned counsel, file this First Amended Complaint against CAPTAIN VINCE WILLIAMS aka Seven Finger ("Captain Williams"), DEPUTY ANDREW YATES ("Deputy Yates"), DEPUTY CHASE SMITH ("Deputy Smith"), SERGEANT DRISKELL ("Sergeant Driskell"), SHERIFF JOE BERLIN ("Sheriff Berlin"), JONES COUNTY MISSISSIPPI & DOE OFFICERS 1-6 and show as follows:

### I.       PRELIMINARY STATEMENT

This civil rights action seeks monetary damages against Defendants for past violations of the Plaintiffs' rights guaranteed by the United States Constitution and Mississippi law. The Defendants' wrongful conduct began on January 11, 2023, while DeShon was at his Jones County, Mississippi residence. Before his interaction with the Defendants, DeShon had never been convicted of any criminal act. At no time relevant herein was DeShon engaged in any illegal activity. At all times relevant herein, the Defendants acted under color of law.

1

The constitutional violations resulted from the policies and customs as established and observed by the final policymaker for the Jones County Sheriff's Department ("JCSD"), Sheriff Berlin. The systemic abuses by the JCSD and Sheriff Berlin result from a custom and culture that encourages, sanctions, minimizes, and protects violations of the constitutional rights of regular citizens and an ongoing pattern and practice of failing to train, supervise, and discipline properly.

Therefore, each Defendant is liable for the constitutional violations and all resulting damages and harms.

## II.      JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, specifically under provisions of the First, Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

2.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked under 28 U.S.C. §§ 1331 and 1343.

3.      The claims made in this Complaint occurred and arose in the State of Mississippi, this District, and the Hattiesburg Division. Venue, therefore, lies in this Court under 28 U.S.C. § 1391.

4.      Under 28 U.S.C. § 1367, this Court also has pendent jurisdiction to hear state law claims.

## III.     THE PARTIES

5.      Plaintiff Deshon Bayless is a natural person and a citizen of the United States and the State of Mississippi.

6.      Plaintiff Angelia Page is a natural person and a citizen of the United States and the State of Mississippi.

7.      Defendant JONES COUNTY is a governmental entity of the State of Mississippi. Jones County funds and operates the JCSD, the primary law enforcement agency for Jones County. On information and belief, the policy maker for the Jones County Sheriff's Department is Sheriff Joe Berlin, who took office on January 6, 2020. This Defendant may be served through its registered agent, Chancery Clerk Bart Gavin, at 415 N. 5th Avenue, Laurel, MS 39441.

8.      Defendant SERGEANT JAKE DRISKELL is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

9.      Defendant CAPTAIN VINCE WILLIAMS is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

10.     Defendant DEPUTY ANDREW YATES is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

11.     Defendant DEPUTY CHASE SMITH is and was at all times relevant to this Complaint a natural person and a Jones County Sheriff's Deputy and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

12.     Defendant SHERIFF JOE BERLIN is and was at all times relevant to this Complaint a natural person and the Sheriff of Jones County, Mississippi and may be served with process at 419 Yates Avenue, Laurel, MS 39440. He is sued in his individual and official capacity.

13.     Defendant DOE DEPUTIES 1-6 are any others who participated in the wrongful conduct but whose names and specific involvement are currently unknown to the Plaintiffs.

## IV.  STATEMENT OF FACTS

CIVIL RIGHTS VIOLATION 1
(Unlawful Search)

14.     DeShon's mother, Angelia Page, owns the home at 4737 University Avenue, Laurel, MS 39440. The house had a Ring camera system.

15.     On January 11, 2023, Ms. Page and DeShon lived together in this home.

16.     At approximately 5:15 pm, DeShon was in his parked car behind his house. Captain Williams, Deputy Yates, and Deputy Smith entered the residential property and began looking into the house's windows and then entered the property's back door.

17.     The deputies did so without consent, a search warrant, probable cause, or legal authority.

18.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

CIVIL RIGHTS VIOLATION 2
(Unlawful Seizure)

19.     At some point, Deputy Yates saw DeShon.

20.     Then, without reasonable suspicion or any other lawful basis, and although DeShon posed no danger to anyone, Deputy Yates ordered DeShon out of his vehicle.

21.     The deputy did so without consent, a search warrant, probable cause, or legal authority.

22.     DeShon immediately complied with this order and calmly exited his car with his hands up.

23.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

4

## CIVIL RIGHTS VIOLATION 3
### (Excessive Force)

24.     Without first ordering DeShon to get on the ground, Deputy Yates grabbed DeShon and, while throwing him to the ground, yelled, "***Get your mother fucking ass on the ground when I tell you to.***" While DeShon was on his back, Deputy Yates violently forced him onto his stomach.

25.     There was no legal basis or justification for ordering DeShon to the ground or forcefully throwing DeShon to the ground.

26.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

## CIVIL RIGHTS VIOLATION 4
### (Unlawful Search)

27.     Once DeShon was lying on his stomach, Deputy Yates got on top of him.

28.     Then, Deputy Yates searched DeShon's person.

29.     The deputy did so without consent, a search warrant, probable cause, or legal authority.

30.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

## CIVIL RIGHTS VIOLATION 5
### (Excessive Force)

31.     Captain Williams, aka Seven Fingers, then joined Deputy Yates and assisted in the unlawful seizure of DeShon.

32.     To show his authority and control over DeShon, Deputy Yates grabbed DeShon by the back of the head and violently shoved his face into the dirt.

33.     At all times relevant herein, DeShon was on his private property and not involved

in any criminal activity.

## CIVIL RIGHTS VIOLATION 6
### (Excessive Force)

34.     Deputy Yates then relinquished control of DeShon to Captain Williams.

35.     While on top of DeShon, Captain Williams insulted and belittled him.

36.     Captain Williams used his left arm to place DeShon in a chokehold.

37.     While holding DeShon in a chokehold, Captain Williams said, "***Let me tell you who the fuck I am. You ever heard of 'Seven Finger'? That's fucking me. Now, say something stupid again. You're going to jail for disorderly conduct. You're going away. How 'bout that?***"

38.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

## CIVIL RIGHTS VIOLATION 7
### (Unlawful Arrest)

39.     Captain Williams arrested DeShon and placed him in handcuffs.

40.     The deputies did not have probable cause for this arrest.

41.     At all times relevant herein, DeShon was on his private property and not involved in any criminal activity.

## CIVIL RIGHTS VIOLATION 8
### (False Imprisonment)

42.     DeShon was taken to the Jones County Jail, where he was booked and then incarcerated for approximately 15 hours.

43.     DeShon was released the following day on his own recognizance.

44.     Ms. Page showed Sheriff Berlin part of the incident footage from the Ring camera.

45.     After viewing the video, Sheriff Berlin knew or should have known (1) that his deputies were guilty of violating DeShon's constitutional rights, (2) that his deputies had no probable cause to arrest or charge DeShon, (3) that his deputies had no legal purpose for being present on the property, (4) that the warrant that was procured by the deputies *post facto* was erroneous and nefariously obtained, and (5) that his intervention was necessary to prevent further violations of DeShon's rights.

46.     Sheriff Berlin failed to intervene or take corrective action at this point.

CIVIL RIGHTS VIOLATIONS 9 & 10
(Unlawful Seizure and Search)

47.     The Defendants unlawfully seized Ms. Page's residence.

48.     The deputies did so without consent, exigent circumstances, a search warrant, probable cause, or legal authority.

49.     Ms. Page's home was unlawfully searched.

50.     Deputies found nothing illegal because the Plaintiffs are law-abiding citizens.

CIVIL RIGHTS VIOLATIONS 11, 12, 13 & 14
(Due Process Violation, Conspiracy Against Rights, Deprivation
of Rights Under Color of Law, Failure to Intervene)

51.     Sergeant Driskell and Deputy Smith did not procure the search warrant for the home until hours after deputies entered the property.

52.     No probable cause existed for the issuance of this search warrant.

53.     The Underlying Facts and Circumstances that were sworn and purportedly used to obtain the Search Warrant contained false statements and were altered after the fact.

54.     Specifically, deputies falsely claimed (1) that the 4737 University Avenue residence was "directly tied to" Patrick Francis who was a known drug dealer; (2) that this connection was confirmed by "information obtained by other Narcotic Agents;" (3) that an

7

informant notified Agent Driskell that DeShon was a friend of Patrick Francis and tied to his drug distribution activities; (4) that throughout three days of surveillance DeShon was in the yard of Patrick Francis.

55.     After the fact, Deputy Yates altered a previous incident narrative. This occurred over three months after DeShon was falsely arrested. This official law enforcement report also contains numerous errors and false statements.

56.     The altered narrative incorrectly states that the interaction with DeShon happened on December 2, 2022, rather than January 11, 2023.

57.     The altered narrative falsely states that an MBN agent knew DeShon to be involved with a known drug dealer, i.e., Patrick Francis.

58.      However, MBN was not investigating DeShon.

59.     The altered narrative falsely states that two deputies "stood at the back door of the residence" and repeatedly called out to see if anyone was in the residence when, in fact, deputies illegally opened the door to the home without a warrant and went inside before they even knew that DeShon was sitting inside of his car near the back door.

60.     The altered narrative leaves out material information and falsely states that deputies "physically placed [DeShon] on the ground."

61.     In truth, deputies threw DeShon to the ground, assaulted him, and then took him to jail even though DeShon had not committed any crime.

62.     The timing of the creation of the documents used to obtain the search warrant is sufficiently in doubt to warrant further investigation and discovery.

63.     As a result of these wrongful acts, Plaintiffs constitutional rights were violated, and they were additionally denied their right to due process.

64.     Sheriff Berlin knew of the violations and sanctioned and approved them at all times relevant herein.

**CIVIL RIGHTS VIOLATIONS 15, 16, 17, 18 & 19**
(Malicious Prosecution, Due Process Violation, Conspiracy Against Rights,
Deprivation of Rights Under Color of Law, Failure to Intervene)

65.     Rather than dismissing the false charge against DeShon, the Defendants continued to prosecute the charge with the blessing and approval of Sheriff Berlin.

66.     At the Justice Court trial on April 20, 2023, three deputies (Defendants Yates, Driskell, and Smith) testified falsely against DeShon.

67.     Because of the actions by all Defendants and even though their testimony was inconsistent and proved that no probable cause existed, DeShon was wrongly convicted of disorderly conduct failure to obey by Justice Court Judge Sonny Saul.

68.     During the Justice Court trial, the testifying deputies provided false testimony to support and justify their unlawful actions. This false testimony included but was not limited to, claiming that (1) the County Court Judge Wayne Thompson gave them verbal permission to seize the property, (2) MBN Agent Josh Stringer told them that DeShon was linked to Patrick Francis's drug operation, (3) they had a Search Warrant at the time they entered the property, (4) DeShon resisted arrest, (5) DeShon failed to comply with lawful orders and (6) Deputy Yates arrested Deshon.

69.     DeShon filed an appeal of the wrongful conviction.

70.     Long after DeShon was convicted, and just days before his appeal was to be heard, the State conceded that no warrant or probable cause existed and dismissed the charge against him. This dismissal occurred after Jones County Prosecutor Risher Caves recused himself and appointed a special prosecutor.

## V.    DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

71.    All the relevant acts of Defendants, their agents, servants, and employees were carried out under the color of state law and in their official capacity as agents of the JCSD.

72.    These acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

73.    For a court to find that DeShon is guilty of violating Mississippi Code Section 97–35–7, the Deputies had to prove that (1) DeShon, with the intent to provoke a breach of the peace, or under circumstances as may lead to a breach of the peace, refused to comply with an order to act; (2) the purpose of the order was to avoid a breach of the peace by DeShon; (3) the person giving the order was a law-enforcement officer; and (4) the law enforcement officer, at the time of giving the order, had the authority to then and there arrest DeShon for a violation of the law.

74.    At no time was there any evidence that DeShon acted intending to provoke a breach of the peace.

75.    At no time was there any evidence, other than the false testimony by deputies, that DeShon disobeyed any commands.

76.    At all times relevant herein, the commands the deputies gave were unlawful because deputies had no authority to arrest DeShon.

77.    The justification given by the deputies for being on the Bayless Property was a Search Warrant that had not been issued at the time of the arrest—moreover, any warrant issued after the fact was not supported by probable cause.

78.    At no time while deputies gave commands to DeShon did the deputies have the authority to arrest DeShon.

79.     At no time did DeShon disobey any orders that he was given.

## COUNT 1
### FOURTH AMENDMENT WARRANTLESS SEARCH
(Yates, Smith, and Williams)

80.     The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their person, houses . . . against unreasonable searches and seizures, shall not be violated . . . ."*

81.     The Fourth Amendment to the Constitution of the United States protects citizens against warrantless searches without probable cause.

82.     Neither Deputy Yates, Deputy Smith, nor Captain Williams had a warrant or probable cause to enter the property.

83.     Deputies entered the property and searched the inside and outside of the home.

84.     This warrantless search violated the Plaintiffs' Fourth Amendment Rights.

## COUNT 2
### FOURTH AMENDMENT UNLAWFUL SEIZURE
(Yates and Williams)

85.     DeShon had committed no offense against the laws of the United States of America, the State of Mississippi, Jones County, Mississippi, or the City of Laurel, Mississippi.

86.     Deputies had no legal basis for concluding that DeShon was engaged in any criminal activity when they unlawfully entered the property and seized Deshon. Accordingly, DeShon's seizure and detention were unreasonable and unconstitutional.

## COUNT 3
### FOURTH AMENDMENT UNLAWFUL SEARCH
(Yates)

87.     DeShon was not engaged in any unlawful activity while in his vehicle.

11

88.     Deputies had no reasonable suspicion for concluding that DeShon was engaged in any illegal activity or that he posed a threat or danger to them.

89.     Nevertheless, Deputy Yates searched DeShon's person without his consent and without any reasonable suspicion that a crime had been committed.

90.     Accordingly, the Defendants violated DeShon's Fourth Amendment Rights.

**COUNT 4**
FOURTH AMENDMENT EXCESSIVE FORCE
(Yates)

91.     The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

92.     The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

93.     DeShon was not committing a crime when in his vehicle with the door open.

94.     DeShon committed no criminal act in the presence of Deputy Yates.

95.     Deputy Yates had no reasonable suspicion to believe that DeShon had committed a crime.

96.     DeShon did not pose an immediate threat to the safety of Deputy Yates.

97.     DeShon was not actively resisting arrest or attempting to evade arrest by flight.

98.     Nevertheless, without legal authority, Deputy Yates threw DeShon to the ground, violently forced him onto his stomach, and pushed his face into the ground, and restrained him.

99.     As a result of this excessive use of force, DeShon suffered emotional and psychological distress.

100.    Under these circumstances, the force used to seize and detain DeShon was excessive and violated his Fourth Amendment Rights.

## COUNT 5
### FOURTH AMENDMENT EXCESSIVE FORCE
(Williams)

101.    The Fourth Amendment to the Constitution of the United States guarantees that *"[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."*

102.    The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

103.    At all times relevant herein, DeShon obeyed the orders of the Defendants, whether lawful or not.

104.    DeShon was not committing a crime while sitting in his vehicle with the door open.

105.    DeShon had not committed a crime in the presence of Captain Williams, and Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

106.    DeShon did not pose an immediate threat to the safety of Captain Williams.

107.    DeShon was not actively resisting arrest or attempting to evade arrest by flight.

108.    Nevertheless, Captain Williams aggressively and without justification used excessive force, including a chokehold, to unlawfully seize, place in handcuffs, and arrest DeShon.

109.    As a result of this excessive use of force, DeShon suffered emotional and psychological distress.

110.    As no crime or violation had occurred, any force to seize and arrest DeShon was excessive and violated DeShon's Fourth Amendment Rights.

## COUNT 6
### FOURTH AMENDMENT UNLAWFUL SEIZURE

(Yates, Williams, and Smith)

111.     The Plaintiffs' residence was not the subject of any investigation. Nonetheless, the Defendants unlawfully seized the Plaintiffs' home.

112.     The Defendants knew that there was no legal basis for seizing the home.

113.     The Defendants did not have a search warrant when they entered the property.

114.     Accordingly, the home seizure was unlawful and violated the Fourth Amendment's protection against unreasonable seizures.

### COUNT 7
### FOURTH AMENDMENT FALSE ARREST
(Yates and Williams)

115.     DeShon had a right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

116.     Deputy Yates and Captain Williams did not have probable cause to arrest DeShon.

117.     Accordingly, these deputies violated DeShon's Fourth Amendment rights.

### COUNT 8
### FAILURE TO INTERCEDE ON JANUARY 11, 2023
(Williams)

118.     A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other law enforcement officers.

119.     Captain Williams knew that Deputy Yates did not have a warrant or probable cause to be on the property. Yet, Captain Williams did nothing to stop Deputy Yates from entering the property and conducting a search.

120.     DeShon was not resisting arrest when Captain Williams joined in to arrest him.

121.    DeShon had not committed a crime in the presence of Captain Williams, and Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

122.    Yet, Captain Williams did not intervene at any point in an attempt to stop any other deputy from engaging in the constitutional violations that followed.

### COUNT 9
### FAILURE TO INTERCEDE ON JANUARY 11, 2023
(Yates)

123.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

124.    Deputy Yates knew there was no warrant or probable cause on the property. Yet, Deputy Yates did nothing to stop any other deputy from entering the property to conduct a search.

125.    DeShon was not resisting arrest when Captain Williams joined in to arrest him.

126.    DeShon had not committed a crime in the presence of Captain Williams. Captain Williams had no reasonable suspicion to believe that DeShon had committed a crime.

127.    Yet, Deputy Yates did not intervene at any point in an attempt to stop any other deputy from engaging in the constitutional violations that followed.

### COUNT 10
### FAILURE TO INTERCEDE ON JANUARY 11, 2023
(Smith)

128.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

129.    Deputy Smith knew there was no warrant or probable cause on the property. Yet, Deputy Smith did nothing to stop Captain Williams or Deputy Yates from entering the property to conduct a search.

130.    Deputy Smith knew that DeShon had not committed a crime in the presence of Deputy Williams or Deputy Yates. Neither Deputy Williams nor Deputy Yates had any reasonable suspicion to believe that DeShon had committed a crime, yet Deputy Smith did not intercede to stop the illegal search, seizure or arrest of DeShon.

### COUNT 11
### FAILURE TO INTERCEDE ON JANUARY 11, 2023
(Driskell)

131.    A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

132.    Sergeant Driskell was approached by Captain Williams, Deputy Yates, and Deputy Smith about obtaining a search warrant after DeShon was arrested. Sergeant Driskell was informed of the facts and circumstances leading up to DeShon's arrest.

133.    Sergeant Driskell knew there was no probable cause to enter the property, search the home, and obtain a search warrant. Yet, Sergeant Driskell did nothing to stop Captain Williams, Deputy Yates, or Deputy Smith from arresting DeShon or getting a search warrant after the fact.

### COUNT 12
### FAILURE TO INTERCEDE ON JANUARY 12, 2023
(Berlin)

134.    Sheriff Berlin is responsible for the unwritten practices and customs of the JCSD, which includes the overall culture of the JCSD and whether that culture respects constitutional rights and requires reporting violations committed by other deputies.

135.    The arrest affidavit used to justify DeShon's arrest was not prepared until the following day, January 12, 2023.

136.    According to the arrest affidavit, **"[w]***hile executing a search warrant on his residence [DeShon] was given commands to exit a vehicle parked in the yard, Bayless ignored commands given and physically resisted Deputy Yates when asked to exit the vehicle*."**

137.    Sheriff Berlin knew or reasonably should have known that the arrest warrant contained material misstatements of fact.

138.    Sheriff Berlin knew or reasonably should have known that no warrant had been issued when DeShon was arrested. DeShon did not ignore commands.

139.    Sheriff Berlin knew or reasonably should have known that DeShon did not physically resist the deputies.

140.    The arrest affidavit commenced the criminal action against DeShon for disorderly conduct.

141.    With Sheriff Berlin's approval, the JCSD has continued to pursue the charge of *disorderly conduct, failure to obey*. Miss. Code §97-35-7(1).

142.    On April 20, 2023, the charge against DeShon was tried in the Justice Court of Jones County, Mississippi.

143.    The day before this trial, a supplemental report in support of the charge was prepared and produced by the JCSD. Sheriff Berlin knew and approved of this supplemental report.

144.    Sheriff Berlin knew or reasonably should have known that the supplemental report contained material misstatements of fact.

145.    With the approval of Sheriff Berlin, three JCDC deputies testified against DeShon to secure a conviction on the charge of disorderly conduct and failure to obey.

146.    The deputies who testified at trial were (1) Sergeant Driskell, (2) Deputy Yates, and (3) Deputy Smith.

147. Sheriff Berlin was in attendance at this trial and heard the false testimony of at least two of the deputies.

148. Upon suspicion and belief, Sheriff Berlin was communicating with the deputies who were witnesses to inform them of the testimony of the others, even though DeShon invoked the rule to sequester the deputies during the testimony of the others.

149. As a result of the testimony by these three deputies, DeShon was wrongly convicted of violating Miss. Code §97-35-7(1).

150. To protect his rights, DeShon had to hire attorneys to defend him against this charge and appeal his wrongful conviction.

151. At no point after the arrest of DeShon did Sheriff Berlin intercede to have the false charge against him dismissed. Under these circumstances, Sheriff Berlin is liable for violating DeShon's Fourteenth Amendment substantive and procedural due process rights.

## COUNT 12
### MALICIOUS PROSECUTION
(All Defendants)

152. Defendants falsely charged DeShon with Disorderly Conduct – Failure to obey.

153. Defendants assisted in prosecuting the charge against DeShon.

154. Defendants did not bring the charge because of a belief that the charge had any factual or legal merit or probable cause.

155. Instead, Defendants prosecuted the case (1) to punish DeShon for their perception that DeShon had somehow disrespected Defendants and (2) to cover up their negligent, reckless, illegal, or unconstitutional actions.

156. After DeShon was wrongly convicted in Justice Court, the State ultimately dismissed the charge against DeShon, thus terminating the action in favor of DeShon.

157.    Due to the Defendants' acts, individually and collectively, DeShon suffered emotional and psychological distress, financial loss, and other harms.

## COUNT 13
CIVIL CONSPIRACY
(All Defendants)

158.    The Defendants agreed and intentionally worked together after DeShon was arrested to commit the unconstitutional acts that occurred after his arrest.

159.    These acts were performed in furtherance of the civil conspiracy.

160.    These acts included, among others, (1) obtaining a search warrant after the fact, (2) using false information to obtain the search warrant, (3) creating official reports and affidavits after the fact, (4) altering official reports after the fact, and (5) testifying falsely to secure a conviction.

161.    These acts (1) had the unlawful purpose of wrongly convicting DeShon of Disorderly Conduct – Failure to Obey, and (2) were an attempt to avoid civil liability and accountability.

162.    These acts caused harm and damage to DeShon.

163.    Defendant Berlin either participated in the conspiracy or failed to intervene to stop the scheme despite knowing it was illegal.

## COUNT 14
MONELL CLAIM

164.    On information and belief, the JCSD has a custom and culture of violating the constitutional rights of others. Though not a written policy, this custom was so widespread as to have the force of law.

165.    None of the JCSD deputies on the scene had body cameras.

166.    The JCSD has a history of wrongfully tolerating, condoning and encouraging constitutional violations. As a result, the custom and culture at the JCSD is for the JCSD to protect its deputies when they violate the constitutional rights of others. The JCSD only disciplines deputies when their actions are exposed by third-party video, making the misconduct impossible to deny or explain.

167.    Sheriff Berlin and the JCSD have a well-established history of failing to properly train, supervise, investigate, and discipline its deputies when they violate the constitutional rights of the citizens of Jones County, Mississippi.

168.    The JCSD has a history of fabricating facts and falsely testifying against arrestees and victims of excessive force to cover up these constitutional violations.

169.    The JCSD has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its deputies feel empowered to violate the constitutional rights of its targets with impunity.

170.    These customs and practices are the moving force behind the violations of the Plaintiffs' rights enumerated herein.

171.    Plaintiffs are aware of many other situations where the JCSD violated the constitutional rights of others.

172.    Sheriff Berlin has never taken corrective action to fix the culture within his department or correct his misstatements to the media. Sheriff Berlin encourages it.

173.    Sheriff Berlin and the JCSD have a demonstrable pattern and practice of improperly training, supervising, and disciplining deputies.

## VI.    DAMAGES

174.     The Defendants are liable to the Plaintiffs, jointly and severally, for all wrongful acts which harmed and caused damage to the Plaintiffs.

175.     Based on these facts and circumstances, and as a direct result of said acts and omissions, one or both Plaintiffs have suffered damage to reputation; past physical pain and suffering; past, present, and future emotional distress; medical bills and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a JURY TRIAL, and that after a jury trial, a judgment be entered against Defendants, jointly and severally, as follows:

1.     Compensatory damages of at least $1,000,000 or such other amount supported by the evidence at trial;

2.     Punitive damages of at least $4,000,000 or such other amount supported by the evidence at trial;

3.     Attorney fees and costs of suit under 42 U.S.C. § 1988;

4.     Ordinary taxable costs of suit;

5.     Prejudgment and post-judgment interest at the legal rate;

6.     All other further relief as the Court deems appropriate.

Respectfully submitted, this the 11th day of December, 2023.

**DESHON BAYLESS and
ANGELIA PAGE**, Plaintiffs

*/s/ Michael V. Cory* _____
MICHAEL V. CORY, JR
MATTHEW LAWRENCE

Of Counsel:
Matthew W. Lawrence (MSB # 105958)
525 N. Main Street
Hattiesburg, MS 39401
(408) 605-8473
mattlawrencelawfirm@gmail.com

Michael V. Cory, Jr. (MSB # 9868)
mc@dmclaw.net
**DANKS MILLER & CORY, PA**
213 South Lamar Street 39201
Jackson, Mississippi 39201
Phone: 601.957.3101